IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Michelle L. Vieira, as Trustee for the Estate of Beach First National Bancshares, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Michael Bert Anderson, Orvis Bartlett Buie, Raymond E. Cleary, III, Thomas Fuhner, Michael D. Harrington, Joe N. Jarrett, Jr., Richard E. Lester, Leigh Ammons Meese, Rick H. Seagroves, Don J. Smith, Samuel Robert Spann, Jr., B. Larkin Spivey, Jr., Walter E. Standish, III, and James C. Yahnis, as Directors of Beach First National Bancshares, Inc., and Walter E. Standish, III, as President and Chief Executive Officer of Beach First National Bancshares, Inc., <br><br> Defendants. | Civil No. 2:11-CV-0055-DCN <br><br> **ORDER AND OPINION** |

This matter is before the court on defendants' motion to dismiss. In her complaint, plaintiff trustee alleges breach of fiduciary duty and negligence causes of action against defendants in their capacities as directors and/or officers of Beach First National Bancshares, Inc. ("Bancshares"). Defendants move to dismiss plaintiff's complaint because it fails to meet the pleading requirements set forth by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); plaintiff lacks standing to sue; defendants are protected by the business judgment rule; and defendants' actions did not cause plaintiff's alleged damages. Plaintiff filed a response in opposition. For the reasons set forth below, the court grants defendants'

1

motion.

## I.  BACKGROUND

Bancshares is a bank holding company organized under the laws of the State of South Carolina.  Beach First National Bank, Myrtle Beach, South Carolina ("Bank"), was Bancshare's wholly-owned subsidiary and primary asset.  "[T]he Bank operated as a national bank association incorporated under the laws of the United States and subject to examination by the United States Office of the Comptroller of the Currency (OCC)."  Compl. ¶ 12.

Defendants are all former Bancshares directors and officers, who allegedly appointed themselves as directors and officers of the Bank, and thus "directly and indirectly controlled the management and operation of the Bank."  Compl. ¶ 14.  An examination by the OCC identified "problems and deficiencies with the management and operation of the Bank," and "[o]n or around September 30, 2008," the OCC and the Bank entered into an agreement that addressed these issues.  Compl. ¶ 15.  In early November 2009, the OCC and the Bank entered into a consent order addressing the same issues—issues which "led to a serious undercapitalization and financial instability of the Bank."  Compl. ¶ 17.  Both the agreement and the consent order required defendants to take corrective action to prevent the Bank's failure, and on or about November 10, 2009, the OCC required the Bank to submit a "Capital Restoration Plan."  Compl. ¶ 18.  On February 18, 2010, the OCC rejected defendants' proposed plan, and on "April 9, 2010, the OCC closed the bank and named the Federal Deposit Insurance Corporation (FDIC) as its receiver."  Compl. ¶ 22.  Plaintiff states that the FDIC then "sold, or approved the

sale and transfer of, all of the Bank's assets to another bank institution, The Bank of North Carolina"; therefore, the Bank no longer exists. Compl. ¶ 23.

On May 14, 2010, Bancshares filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of South Carolina ("Bankruptcy Court"). On or about May 17, 2010, plaintiff was appointed as the Chapter 7 trustee of Bancshares' estate, and on September 29, 2010, plaintiff filed an adversary proceeding against defendants, alleging breach of fiduciary duty and negligence claims and seeking actual, consequential, and punitive damages. In addition, the complaint requests that the court enter an order declaring that the claims and any resulting recovery are property of the bankruptcy estate pursuant to 11 U.S.C. § 541, and that the court grant reasonable attorney's fees and costs.

On December 1, 2010, defendants filed the instant motion and a motion to withdraw the reference in the Bankruptcy Court. On March 18, 2011, this court held a hearing regarding defendants' motion to withdraw the reference. At the conclusion of the hearing, the court entered an oral order granting defendants' motion. This was followed by a written order on April 29, 2011. On April 15, 2011, the court ordered that plaintiff submit her response to defendants' motion to dismiss by May 16, 2011. Defendants were given until June 6, 2011, to file a reply.

In the instant motion, defendants make the following four arguments: (1) the complaint does not meet the pleading standards established by Twombly and Iqbal, (2) plaintiff trustee lacks standing to pursue shareholder derivative claims against defendants, (3) the complaint "fails to allege facts sufficient to overcome the presumption afforded to

the Defendants by the business judgment rule," and (4) the complaint fails to "establish causation for any damages allegedly resulting from the Defendants' conduct prior to the FDIC's seizure of the assets of [the Bank]." Mot. Dismiss 2.

Plaintiff filed a response in opposition on May 16, 2011. Plaintiff argues that Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") preemption issues do not exist because the FDIC has chosen to assert its claims through the Bancshares bankruptcy and the complaint does not assert derivative claims. Plaintiff argues that the complaint is factually sufficient under Twombly and Iqbal and its allegations "constitute violations of the standards required of officers and directors under S.C. Code Ann. §§ 33-8-300 and 33-8-420 and deprive Defendants of protection under the business judgment rule." Resp. Opp'n 8. Lastly, plaintiff argues that defendants' conduct caused the damage at issue in this case, not the FDIC's decision to close the Bank.

## II. DISCUSSION

The court granted defendants' December 1, 2010 motion to withdraw the reference in large part because resolution of the issues raised by plaintiff require substantial and material consideration of FIRREA, specifically 12 U.S.C. § 1821(d)(2)(A)(i).[1] The text of that subsection is as follows:

(d) Powers and duties of [FDIC] as conservator or receiver

. . . .

---

[1] The court found that mandatory withdrawal of the reference was appropriate for this reason.

>     (2) General powers
>
>         (A) Successor to institution
>
>         The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to–
>
>             (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . .
>
>             . . . .

12 U.S.C. § 1821(d)(2)(A)(i). In the motion to withdraw the reference, defendants raised the issue of whether plaintiff trustee can file derivative breach of fiduciary and negligence causes of action when § 1821(d)(2)(A)(i) grants that right exclusively to the FDIC. That very issue is decisive in the instant motion to dismiss. If plaintiff lacks standing, consideration of the other three issues raised by defendants is unnecessary.

> Generally, an action seeking to remedy a loss to the corporation is a derivative one. If, however, corporate mismanagement has caused a particular loss to an individual stockholder, the liability is an asset of the injured individual, remediable by an action in his name. A shareholder may maintain an individual action only if his loss is separate and distinct from that of the corporation. A shareholder's suit is derivative if the gravamen of his complaint is an injury to the corporation and not to the individual interest of the shareholder.

Hite v. Thomas & Howard Co. of Florence, Inc., 409 S.E.2d 340, 342 (S.C. 1991) (internal citations omitted), rev'd on other grounds, Huntley v. Young, 462 S.E.2d 860 (S.C. 1995).

In her complaint, in regard to her breach of fiduciary duty claim, plaintiff alleges that defendants' decision to serve in dual roles as directors and officers of both

Bancshares and the Bank and their mismanagement of the Bank "resulted in a failure of the Bank and the OCC's closing of the Bank, thereby causing the destruction and wasting of Bancshares' wholly owned subsidiary and corporate asset, and causing an irreparable financial harm to Bancshares, its creditors, and its stockholders, for which the Defendants are accountable." Compl. ¶ 29. "Bancshares has incurred actual and consequential damages as a direct and proximate result of the Defendants' breaches of their fiduciary duties to Bancshares . . . ." Compl. ¶ 31. In paragraphs 34 through 36, plaintiff makes similar allegations in support of her negligence claim, alleging that Bancshares suffered actual and consequential damages as a result of defendants' failure to exercise due care. The harm alleged by plaintiff is not one unique to an individual shareholder, it is harm to Bancshares, along with all of its creditors and shareholders, resulting from the mismanagement and failure of its primary asset, the Bank. Thus, under South Carolina law, plaintiff's claims are derivative claims.

> It is well settled under South Carolina law, as well as the law of other jurisdictions, that causes of action for losses sustained because of the mismanagement and negligence of directors, officers, and employees of a bank belong to the bank itself, and not to the stockholders or creditors; and in the event of its liquidation, such causes of action are vested in its receiver; and may be conveyed and sold as any other asset.

FDIC v. Am. Bank Trust Shares, Inc., 412 F. Supp. 302, 306 (D.S.C. 1976) (citations omitted), vacated and remanded on other grounds, 558 F.2d 711 (4th Cir. 1977) ("American Bank I"). On remand, the district court concluded once again that the "FDIC is the owner of all derivative causes of action, including causes of action for harm done by employees, officers, and directors" of a bank and its holding company. FDIC v. Am.

6

Bank Trust Shares, Inc., 460 F. Supp. 549, 561 (D.S.C. 1978) (Simons, J.), aff'd, 629 F.2d 951 (4th Cir. 1980) ("American Bank II"). In Bauer v. Sweeney, 964 F.2d 305, 308 (4th Cir. 1992), the Fourth Circuit reaffirmed the holdings in the American Bank cases. ("[T]he American Bank cases are controlling on the facts of this case and the shareholders of the former owner of the causes of action at issue lack standing to pursue this action."). See also Lubin v. Skow, Nos. 10-10011, 10-10068, 2010 WL 2354141, at *2 (11th Cir. June 14, 2010) (affirming district court's determination that "FIRREA grants the FDIC ownership over all shareholder derivative claims against the Bank's officers.").

Plaintiff states that "the FDIC, as the Receiver for the Bank, filed a Proof of Claim in the Bancshares' bankruptcy case to protect its rights under FIRREA and to avoid any claim that it waived any of its rights under FIRREA regarding claims asserted by the Trustee on behalf of Bancshares." Resp. Opp'n 3 (footnote and citation omitted). She also attaches a letter from the FDIC in which one of its lawyers informed plaintiff of the following:

> In the case of [Bancshares], staff is not convinced that any civil claim against the directors or officers would be cost-effective and will not recommend that any claim be pursued. We make no comment as to whether or not there is a meritorious claim. We have not made a demand against the directors or officers, nor have we notified the insurance carrier for the director and officer's liability policy or fidelity bond, that we are making any such claim. We have withdrawn the on-site contractor that aided with the investigation. We have filed a claim with the bankruptcy estate of [Bancshares], and if any recovery for the estate is realized, the FDIC would make its position for recovery from the estate.

Resp. Opp'n Ex. A, at 2. Plaintiff argues that since

> the FDIC is not asserting any separate claims or asserting preemption of the Trustee's D&O claims in favor of the FDIC under FIRREA, and the FDIC has indicated that it will seek recovery of any claims pertaining to the Bank through any recovery obtained on behalf of Bancshares' in this action as initiated by the Trustee,

there are no preemption issues preventing plaintiff from asserting her claims. Resp. Opp'n 3-4.

Plaintiff's argument is unconvincing. She cites no statute or case law supporting the position that a trustee can somehow take, inherit, or even be assigned, the rights granted to the FDIC under § 1821(d)(2)(A)(i), regardless of whether the FDIC acts on that authority. The American Bank and Bauer holdings do not support such a conclusion. Moreover, plaintiff acknowledges that "[u]nder FIRREA . . ., Congress enacted a statutory scheme *granting the FDIC* authority to act as receiver for a failed financial institution and *special powers* to carry out that function." Resp. Opp'n 2 (citation omitted) (emphasis added).

Next, plaintiff argues that she drafted her complaint with the Eleventh Circuit's Lubin decision in mind. In the underlying Lubin v. Skow case, No.1:09-CV-1155-RWS, 2009 WL 2175857, at *1 (N.D. Ga. July 21, 2009), the district court was faced with facts strikingly similar to those before this court in the instant case. Integrity Bancshares, Inc., a bank holding company, had a wholly-owned subsidiary, Integrity Bank, that went into receivership. Id. The FDIC took control of the bank's assets, and the holding company filed a voluntary bankruptcy petition under Chapter 7. Id. The trustee appointed in the case then initiated an adversary proceeding against former directors and officers of the holding company and/or its subsidiary bank, seeking damages for breach of fiduciary

8

duties, negligence, and attorney's fees.  Id.  The district court granted the defendants' motion for withdrawal of the reference in that case.  Id. at *2.  Later, it ruled on the defendants' motion to dismiss.  See Lubin v. Skow, No.1:09-CV-1155-RWS, 2009 WL 4641761, at *1 (N.D. Ga. Nov. 30, 2009).

In Lubin, some of the defendants were directors and/or officers of both the holding company and the bank, and others were only directors and/or officers of the bank.  2009 WL 4641761, at *1.  The complaint only contained allegations relating to the defendants' actions as directors and/or officers of the bank.  Id.  "The gravamen of Plaintiff's claims against Defendants is that they harmed the Debtor holding company and imperiled the capital provided to the Bank by negligently managing the Bank's operations and thus breaching their fiduciary duty to the Debtor."  Id. at *2.  The district court held that "all shareholder derivative claims against officers of the Bank belong to the FDIC," Id. at *3 (citation omitted), and the trustee did not have standing because he did not "assert actions taken by Defendants that caused Integrity direct and unique harm, as opposed to harm that is derivative of harm to the Bank."  Id. at *4 (citation omitted).

The Eleventh Circuit agreed with the district court, holding that "FIRREA grants the FDIC ownership over all shareholder derivative claims against the Bank's officers."  Lubin, 2010 WL 2354141, at *2 (citation omitted).  The court added, "Because the FDIC succeeded to all of the Bank's legal rights under FIRREA, only the FDIC can sue Bank officers for this alleged breach of fiduciary duty to the Bank.  The Trustee therefore lacks standing to bring a derivative suit against the Bank's officers."  Id. at *3.  However, the Eleventh Circuit distinguished claims asserted by a trustee against directors and/or

officers of a holding company which allege a "direct harm" to the holding company. Lubin, 2010 WL 2354141, at *3 (citation omitted). The court held that "if the Trustee can establish a direct harm to the Holding Company caused by the Bank officers, that harm would be separate from the derivative harm" and "FIRREA would not be a bar to standing." Id. (citation omitted).

To avoid the result in Lubin, plaintiff in the instant case asserts that she drafted her complaint with the purpose of alleging that defendants caused a direct harm to Bancshares, separate from the harm visited upon the bank. The fatal shortcoming in her pleading, aptly described by the Eleventh Circuit, is that "[t]he alleged harm to the Holding Company stems from the Bank officers' management of Bank assets. This harm is inseparable from the harm done to the Bank." Id. at *4 (citation omitted). All of the directors and/or officers of Bancshares were the directors and/or officers of the Bank. "That the Bank officers' poor business choices reduced the value of the Holding Company's investment does not alter the fact that the harm is decidedly a derivative one." Id. (citation omitted).

In In re Southeast Banking Corp., 827 F. Supp. 742, 744 (S.D. Fla. 1993), aff'd in part, rev'd in part on other grounds, 69 F.3d 1539 (11th Cir. 1995), the Chapter 7 successor trustee of Southeast Banking Corporation, a holding company, alleged various claims against the directors and officers of Southeast's wholly-owned subsidiary bank, including breach of legal duties and negligence. The district court found

> that the Complaint is substantially dominated by derivative allegations rather than pleading distinct harm to [the holding company]. Specifically, averments in [the] Complaint . . . are all derivative and turn on acts taken by,

10

> and injury to, the Bank. These allegations plead classic derivative claims which can only be asserted by the successor in interest to the Bank, the FDIC.

Id. at 746 (citations omitted).

> Any possible doubt on this issue has been legislatively dispelled by Congress. FIRREA, 12 U.S.C. § 1821(d)(2)(A)(i) (1988), specifically provides that such derivative claims belong exclusively to the FDIC. . . . There is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were "crucially dependent" on the Bank .
> . . .

Id. Accordingly, the district court dismissed all of the trustee's derivative claims. Id. at 747.

In an unpublished decision, the Fourth Circuit affirmed a district court's decision holding that shareholders of a credit union under a federal conservatorship were barred from suing derivatively by FIRREA. Lafayette Fed. Credit Union, v. Nat'l Credit Union Admin., 960 F. Supp. 999, 1005 (E.D. Va. 1997), aff'd, No. 97-1837, 1998 WL 2881, at *1 (4th Cir. Jan. 7, 1998). The holdings in the Southeast Banking and Lafayette decisions were also cited by a district court in the Eastern District of Virginia when it applied the same rationale to derivative claims made pursuant to the Housing and Economic Recovery Act (HERA), "whose provisions regarding the powers of federal bank receivers and conservators are substantially identical" to those in FIRREA. In re Fed. Home Loan Mortg. Corp. Derivative Litig., 643 F. Supp. 2d 790, 795-96 (E.D. Va. 2009).

It is clear that plaintiff seeks to pursue derivative claims against defendants. Her complaint alleges that the directors and officers of Bancshares and the Bank were one and the same, and the harm caused to Bancshares, the holding company, was the direct result

11

of the failure of its wholly-owned subsidiary and primary asset, the Bank. Section 1821(d)(2)(A)(i) grants the right to pursue such derivative claims exclusively to the FDIC; therefore, plaintiff lacks standing to sue, and her complaint must be dismissed. Consequently, it is unnecessary to reach any of the remaining issues raised by defendants.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion to dismiss.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**August 25, 2011
Charleston, South Carolina**